Good morning. May it please the court, my name is Lisa Shandra, counsel for Appellate Aubrey Ray Johnson. I'd like to reserve two minutes for rebuttal. Okay. The clock counts down, so keep an eye on it. This case involves an egregious series of erroneous transfers from federal to state custody, four errors altogether. During this series of transfers, the state of Texas twice relinquished its primary jurisdiction over Mr. Johnson when it transferred him into the custody of the United States Marshals on federal detainers. Can you help me with this part? I have lots of questions about this case, but there doesn't seem to be any disagreement that it was an administrative error or an error in relinquishing him. How does that affect the analysis of primary jurisdiction? So can the state relinquish primary jurisdiction due to an administrative error? Is there any case that helps us on that? There are a couple of them, although there's not really a good answer to that question because there isn't really law on that point. My argument is that, and the district court discussed this a little bit, is that there are two different viewpoints. One is to correct an administrative error, which is the government's argument, and then the other is to give full effect to the intent of the sovereign at the time of the transfer. So is the intent of the sovereign, do we look at, presumably, low-level staff people or officials who made a mistake, and is the intent of the sovereign deemed to be the mistaken decision of the administrative officials? Well, it is a factual determination. The problem here is that, unlike all of the cases that were cited by both parties, it was a situation of multiple transfers and multiple errors. The twice in – well, it seemed in your briefing you were only looking at the two that the state made, not the earlier. The earlier one I was not because he was in custody, in Federal custody, during his Federal prosecution on a writ of habeas corpus ad prosequendum, so he was essentially on loan. And while in his pro se briefing he had originally focused on that, I conceded there's just not an argument there because he was on loan, it was on that writ. Whereas later, these were on Federal detainers, he was accepted into Federal custody, he was designated the state's – And that's my second question, but let me just go back for the first question, which is the intent of the sovereign. We know that the sovereign didn't intend to relinquish him because they later said this was a mistake, give him back. So it seems like it's not a factual matter because we know that was not the actual intent. It seems like a legal question as to whether as a matter of law, and I think the one court that found that it was binding on the sovereign, it's a legal question as to whether as a matter of law an error by State officers relinquishes the State's primary jurisdiction. And I'm not even sure how we analyze that question and I was hoping you had some suggestions. Well, I have two things I want to say. First, I'd like to go back to the facts, if you don't mind. I don't agree that it was necessarily just a simple administrative error, which in many of the cases that were cited, that is what happened. But that's not what happened in this case because twice he was transferred and both times it was the State saying his sentence is done, you take him. The federal government took him. They designated him at the State the second time in December of 2009. The State is even saying we're going to send him out on the streets. And it wasn't the State who said, oh, we made a mistake, we want to take him back. It was the Bureau of Prisons who, after he had already been designated and was processed through, discovered the error. It was not the State realizing their own mistake. If I might just quickly follow up. I'm looking at the statute 18 U.S.C. section 3585A and B. And tell me how this doctrine of primary jurisdiction or whatever it's called, you know, interacts with that statute, which on its face seems to be fairly clear, stating that a sentence to a term of imprisonment commences on the date defendant is received in custody, awaiting transportation to or arrives voluntarily to commence service of sentence at official detention facility at which the sentence is to be served. So that on the face of it looks fairly straightforward, fairly clear. So how does this other doctrine impact this? Well, and that's exactly the problem in this case, is that when it's a straightforward situation of one error, which is what happened in most of the other cases, then this works. Because you've got subdivision A, exactly like you were saying, that says when he's federal custody begins. Then subdivision 2 says he can get credit for any prior time that he had done that was not credited against another sentence. And again, that works fairly well in a situation of one error. But he got credit for all the time here, did he not? He got State credit. Right. Because he was initially serving a six-year State sentence. Right. And he was initially arrested by the State and prosecuted by the State. It was a later federal prosecution. So that leaves the State under a case law, primary jurisdiction over his violation. Right. And he was in the body, if I can use that term. Yes. So I think what you're arguing is that without a writ, any transfer would trigger the statute. And as soon as he were placed in the custody and on, in this case, at the federal institution, then under your view of 3585A, the statute would immediately apply and the doctrine of primary jurisdiction would, would no longer be applicable. I am saying that, but not as quite such a bright line situation. The problem you have is the case law that talks about intent. Because as Judge Yakuda points out, when the State sovereign finally realized what had happened, at least on a and the Bureau of Prisons transferred him back to State authorities. It was actually the Bureau of Prisons, not the State that realized the error. But the point is that when the State sovereign was alerted to the fact they said, we want him back, he still owes us time on the six-year sentence. So that doesn't sound to me like they voluntarily relinquished custody of him. Well, the fact that they did it . . . In a legal sense, if there is such a thing. Right. The fact that they did it twice in this relatively short span between August and December of 2009, and the second time they were pretty insistent upon it. There is an email in the record saying, if you don't take him, we are putting him out on the streets. That shows a pretty strong intent. And . . . But he, he got federal credit for the street time, didn't he? That was actually later. That was in 2011. The answer is yes. He, he got federal credit on his sentence for that. Yes, but that was a year and a half later. Okay. Could you, just turning you back to the language of the statute again, does the language, awaiting transportation to, mean, add anything? I mean, I guess, how do we know when somebody is awaiting transportation to? So, so the, the plain language just says, the, the federal sentence commences on the date the defendant is received in custody awaiting transportation to the official detention facility. So how do we know that was the case here? I mean, was because the, the email chain and the like said, well, we haven't designated him yet. And the word designated doesn't appear in that statute. Help me, just give me your explanation of what those words mean and what the evidence in the record is here. Okay. Based on my understanding of BOP procedures, which is not extensive, I would say that he's on that federal detainer, which is, you know, the federal government saying, right, we've got to hold on him. We get him next. And so when the state is putting that in motion, which the state did here initiate twice in 2009, when the state is putting that transfer in motion pursuant to that federal detainer, as opposed to the writ from when he was on trial, when he was on loan, that, that to me would fall into the category of awaiting transfer. Okay. Cause it, cause it seemed like some of the evidence in the record suggests that they didn't really know what to do with him. They put him here and then they sent him there and then they put in the other place. That's the problem. This is why this situation is so egregious. It was back and forth and back and forth. Well, we don't want him. We don't want him. You take him. It's egregious because he kept committing crimes and then he got prosecuted. What was it? Five or six different times for state and federal violations. And so the system has to adjudicate the charges that are, that are pending against him. And that's why they kept moving him around because he had to go to court to answer all these pending charges. So you, you want to characterize it as egregious and I'm saying contributory negligence here at the least. Um, he certainly had a hand in the reason that, that he was being moved around. Well, your honor, without excusing his offenses, offense conduct in any way, when he's in custody, the state has a responsibility to him to put him in the right place and he has no control over where he's going and who's taking him where and whose jurisdiction he's under. So it's not his fault. He was being transferred around and yes, he did commit offenses in different jurisdictions and that's part of why he's being transferred. And I think you're over your time, but can I ask one? Yeah, yeah. Oh, absolutely. Yeah. This is the last case on the calendar, so we're not two short questions. One, aren't there cases that hold that even when the state is negligent, it still can be held to have given up its primary jurisdiction or whatever the doctrine is called. Uh, and two, isn't part of this, uh, whole notion of determining who is primary and who's not so that we can function a federal system. And so the part of that's a bureau policy to say, look, where do you start? You know, who gets to go first? Who gets to go second? It doesn't always work out smoothly. I know that in fact, in terms of cases that we thought the fed would go first, but it turns out the state's going first. So I didn't know whether to say concurrent jurisdiction or not, those old cases. So it doesn't work smoothly all the time. But is this doctrine that we've been talking about, it's not an absolute doctrine as to when you get credit and when you don't, is it? No, there's no consensus on it, even within circuits. There's the one case I cited to Luther versus Vanier, where they referred to not, uh, let's see, it says courts have consistently held executives to a negligent standards. Um, and under that, they said that the defendant, um, his federal sentence ran as soon as he was in federal custody. Is that, is that a pellet case? Who is that? It's a district court case. District court. That's a, there's just no, there's no consensus. There's not that much on it. So there's very little to go on. Why don't we hear from the government? Yes. Thank you. I'll give you a couple of minutes on rebuttal. Thank you. Good morning, Presiding Judge Tolman, members of the panel. My name is Mike Tierney. I'm Assistant U.S. Attorney for the Eastern District of California. Johnson here seeks double credit, and he's not entitled to that credit. He already, uh, uh, received the remedy that he was entitled to, which was day for day state credit for the errors that are relevant. Well, isn't this the state's problem in the first place if, in terms of the double credit? Because the state, as I would understand it, could have chosen not to give him double credit. The state chose to give him credit for his federal sentence. There's nothing that would have required them to do that at all. So they have decided that his sentence would be something less than what he was originally to have, have had, um, in the first instance. And so, uh, why should that, um, cause him not to get credit for his entire federal sentence? The state didn't have to do it. They did, they did the, the, uh, they gave him the credit. Actually, Judge Oliver, the effect of the state's credit was to make sure that he served his full state sentence, and then was turned over to the federal government. So the state credit didn't reduce his state sentence, it actually made sure that he served the full state sentence. Now we turn over to the federal side, and the, and the question for the federal government, the federal BOP, is should he serve his entire federal sentence that the So, and, and really the importance of that point is, uh, is that the state's decision to give him credit implemented the, uh, the sovereign's intent and the intent of the court. So what the state was saying by giving him credit was that, well, we erroneously transferred you over to a federal facility, and the feds held you for a while, but we consider that you were in state custody, state primary jurisdiction that whole time. So no matter where you were physically serving it, our intent was that you were in state custody, you would serve out your whole state sentence, and then we'd turn you over to the feds. So it's a good way for, for, for BOP and for this court to know that the, that what they were doing with that credit was saying, uh, what the courts have said, and what we're trying to do is all of your state time first, and then we're gonna move you over to the federal side. Let me, um, ask you about the, the BOP policy statement, um, where it says if, if there was a mistake, um, we, we interpret, I guess, 3585 as if there's a mistake, it doesn't really count, but by its terms, it's limited to the situation where, um, the mistake, um, stemmed from a writ of habeas corpus ad prosequendum, uh, not from this sort of error. And so before I even get to the question about how much deference we give, um, is this even applicable, or has the, um, BOP interpreted this as applying to other sorts of mistakes? I think it is applicable, Your Honor, because you're right, there is some language, um, later on in that, in that, in the, in the relevant policy statement, BOP policy 5160.05 at pages 11 and 12, that talks about, uh, writs of habeas corpus ad prosequendum, but when BOP calculated its sentence here, um, what they were doing was quoting that policy statement, well, they were both quoting that policy statement, and they were enforcing the general idea of primary jurisdiction. So while the policy statement is specific, um, to a, uh, one set of factual circumstances, the idea that BOP, um, has that policy statement as an expression of how to enforce primary jurisdiction, and when it transfers, that has application in a wider set of circumstances. So, so there's no writing, but the BOP hasn't, um, promulgated any policy that would be broader than what, um, uh, the one is that we have, the 5160.05, and is there any, anything in the record showing that they regularly apply it to other sorts of mistakes? There's nothing in the record about other par, other types of mistakes, Your Honor, but I would say that even though there is a reference to writs of habeas corpus ad prosequendum in that policy, um, that reference doesn't limit it to only those factual circumstances, because really what it says, it's a rule for when to interpret the transfer of primary jurisdiction. When it's been determined that an inmate was committed improperly to federal custody, and primary jurisdiction resides with a state sovereign, we return them, and we see whether there's credit. So let me get back to Judge Oliver's question, which I have a question about also. There's nothing in 3585 that refers to primary jurisdiction, or says this A, 3585A, doesn't apply if the state still, um, has primary jurisdiction. So why would we read that into the statute? Well, Your Honor, uh, this Court's, uh, already done it on a couple of occasions, and, um, I can't speak for, for what this Court, uh, was thinking when it did that, but the fact is that 3585A doesn't have anything, doesn't answer a range of questions about what happens in various interactions between the state and the federal government. So back in 1991, um, there's Brewer v., uh, Thomas v. Brewer, which is a case that we cited in our briefs, um, and the, what happens there is that the defendant is sentenced by the federal court, and the federal court designates him to the attorney general for, uh, for what they did back then, a study. This was back in the 1960s, and then, uh, then he's further designated. Is this a mental health evaluation? I'm sorry, say again. Mental health evaluation. I think that's right. Okay. Um, and, and, and after that, he is, so he's sentenced by the federal court and committed to the custody of the attorney general, and then he's moved into a federal ring, wing of a facility. And so what the, um, what the prisoner argued in that case was, well, now I'm in, under the terms of, uh, it was, back then it wasn't 3585, it was 3568, a predecessor statute that was similarly worded. He said, well, hey, I'm received in custody, awaiting transportation to the attorney general, I'm in a federal facility, so my federal time should start. And what this court said then was, um, no. That was pursuant to that writ, but I guess that you're saying that doesn't make any difference. Well, that's the issue, Your Honor. So the court said no, that you're, you're not actually, you haven't actually started your time because you were on an earlier writ, and so you haven't been transferred into federal custody, really. So even back then, what the court is saying is, in order to resolve questions under 3585, when there are two different sovereigns involved, we gotta take a look at this notion of primary jurisdiction. It also came up in Del Guzzi v. United States, um, 980, which was also cited in the briefs. And the, and, and there, the petitioner, I, I, well, the, uh, the prisoner was making kind of a, a stretch. He was saying, whenever I get concurrent time from the state, and then I'm gotta, then I gotta go serve my federal time, or serve whatever's left over later. Well, the state facility is really, I'm awaiting transportation to the federal facility, because in a, in several years, I'm just being held here, and then I'm gonna be transported to the federal facility. And again, this court said, no, um, as an issue of primary jurisdiction, you have to, you're in the hands of the state, until you come over to the federal government's custody. So as long as you're in the hands of the state, 3585 isn't triggered, despite the plain language. Is that what you're saying? Yes. And, and, and let me just follow up. We talked about the policy statement. There are all kinds of factual situations that you encounter, as you know, relative to when a person's been sentenced. And sometimes the states will relinquish and allow a person to do federal time first. Uh, sometimes there's a mistake, like in this case, uh, and, you know, the question is, what should happen there? But we're always having those kinds of, um, pushes and tugs. And the one clear area that you can address easily is when there's a writ. When one state has a, a state has custody, and so forth. And that's the one I think the Bureau was trying to address explicitly. But I don't read into that or any of the cases that this whole notion of primary jurisdiction means that once you start serving a sentence in the state, for example, that there's nothing, nothing that will cut that off, uh, no matter how many times you go into federal, uh, custody. I don't see the cases going that far. I think the primary jurisdiction doctrine really just requires that, and have the person serve the sentence first. But when it intersects with other requirements, like this 35, um, this, um, statute we're looking at, 3585, it gets much more complicated. And I don't think it, I don't see how you could argue that it, it totally overrides that statute in, in every instance. I, I, I don't. Well, Your Honor, I think that the, that primary jurisdiction is maybe a little bit more robust than you're suggesting. Because what it requires is a clear intent by both sovereigns. It in, it, it requires intent by the, by the first sovereign to give it up, and it requires intent by the second sovereign to pick it up. So, for example, in Poland v. Stewart, what this Court said in 1997 is, it's the Attorney General's job to exercise that authority. Um, if she chooses to leave the prisoner in the custody of the State of Arizona, neither Poland nor this Court is in a position to say that she lacks authority under the Constitution to do so. So, that's why intent is key. You, um, and, and so where that comes out here is that we really have to look, oh, and I see my time is up. Yep. Go ahead. Okay. All right. I let your, I let your opponent run over. Go ahead. Sure. Thank you, Your Honor. Um, so, so that means that we have to take a look at intent and, and not to extend my time too much, but to just answer Judge Ikuda's question, um, to my co, to opposing counsel a moment ago. We, we test that by, by looking to determine what the hallmarks of that intent are. I mean, whether you call it totality of the circumstances or whatever it may be, there's lots of evidence here that what both Texas and the federal government meant to do was serve all your state time first, then transfer over to the federal government and serve your federal time afterwards. I have... No, no. Go right ahead. I, like I say, I don't, we're under any big time pressure here. This is a tricky little case. Um, so going back to 3585A, um, can you, uh, walk me through what does it mean to be received in custody and awaiting transportation to the official detention facility? And was there evidence, um, that, um, Mr. Johnson was in that situation here? As... You know, putting aside the legal issue of who has primary jurisdiction. I think what she's asking is tell her how the designation process works with the Bureau of Community, whatever it's called. And the word designation doesn't appear in the statute, so help, help me put some content to these words. True. So what 3585A is trying to get to is you are in federal custody when you either, uh, when you show up at the Marshal's office or at a Bureau of Pres... at a Bureau of Prisons facility that the Bureau of Prisons has said that you have to show up on. Or if you're on a federal detainer, so you're sitting someplace else, but you have, you've finished up whatever sentence or whatever has required you to be in custody in the first place, and, uh, and there is a federal detainer, now again, here's where we come into primary jurisdiction, because it doesn't say anything about primary jurisdiction here. But the case law has said that that only really operates when, when you are awaiting transportation and the, the first sovereign has given up custody over you, intends to give up custody of you, uh, permanently, and the receiving sovereign intends to take you permanently. So he was in federal custody, there's no dispute about that, the Marshal's service had him. Um, was he, um, certainly for habeas purposes he'd be in custody, um, was he, um, awaiting transportation to the official detention facility at which the sentence is to be served? It's, it's very knotty to relate the, um, procedure to the, the facts here, but he was in the, to use less loaded terms, he was in the hands of federal authorities many times. For example, his writs of habeas corpus ad prosequendum for the federal, uh, for the federal case when he was first coming over for those, uh, uh, for those, uh, uh, for the proceedings in his federal case. That did not activate 3585A though, because even though he was received in the custody of the U.S. Marshal's service, the state hadn't given up primary jurisdiction over him. And so, despite the fact that he's being held by the feds on official legal process, 3585A doesn't kick in, and, and that's of course what, uh, what the petitioner just talked about, the first error that really has no meaning here because the state didn't intend to give him up. So awaiting . . . That's pretty clear. Go ahead. I was going to say that, that's pretty clear that when he, when he gets, uh, brought over on a writ, that he, he, he has not been designated, that he's not, you know, um, received awaiting transportation to, normally that would not be the, the case. He's been held for a different purpose. Correct. So here was he awaiting transportation to? No. He wasn't. Actually, the ironic part of this case is that there was never a circumstance in which he was waiting at a state facility for the federal government to pick him up to serve his sentence. He was released to the street by the state authorities. Well, actually, he was at the Dallas County Jail, was he not, when they kept saying, please come and pick him up, and no marshal ever appeared. And so they said again, please come and pick him up, and no marshal occurred, appeared, and so they opened the door and said, have a nice day. Well, that's certainly, that's certainly the key issue here. So that, that factually, that's correct. That is what they, that's what Dallas County said. One thing I'm not sure that you addressed in Judge Akuta's question, and it, and it's hard to understand, um, normally is it not the case that when a defendant is sentenced in federal court and the judgment and commitment order is delivered to the marshal, the first thing the marshal does is A, take custody of the defendant if he's not already in custody, unless the court has allowed him to self-report to the institution. The marshal then takes that judgment and commitment order and gives it to a community office of the Bureau of Prisons, which actually designates the federal prison that he is to serve his federal sentence. And the marshal hangs on to the body of the defendant in the local lockup until such time as it gets word from the Bureau of Prisons he's going to Institution X, at which point the marshal makes arrangements to transport him to that federal facility where he is to serve his sentence. Now, he gets credit from the Bureau of Prisons for all the time that he's with the marshal, even though he's not at the Bureau of Prisons facility. So that's what the statute refers to when it talks about a designation or official detention facility at which the sentence is to be served. So is, was he designated to a federal facility here? The email, um, didn't indicate that he was designated, not actually designated. I guess this was the declaration of Henry Davis that he was not actually designated. So what, what's the evidence as to whether he was designated or not? Well, he, he was designated. He was designated a couple of times erroneously to BOP custody. But again, that was erroneous. It was based on the mistaken, the mistaken belief that he had served all of his state time and could now come into federal custody and be designated because he, um, he, he had finished that sentence. So what should have happened is that the marshal had it known, should have told the designation office, this guy is a state prisoner that we ridded out of state custody so that he could answer the federal charge, at which point the BOP would not have made a designation and presumably the guy would have been returned, should have been returned by the marshal to state custody. That's where the mistake occurred. That's right. And, um, I would also say, Your Honor, that that's what the marshal's service tried to do. I mean, in the midst of error number three in December of 2009, the BOP and the U.S. Marshal's Service, BOP asks the marshal's service, hey, is he completely done with his state time? We, we don't want to designate him. We don't want to take him unless he's done with his state time. And the erroneous answer came back, yes, he's done with his state time. Okay. Any further questions?  Okay. Thank you. Thank you, counsel. Thank you. If I can have just a couple of minutes. I want to clarify the timeline of the errors because I think there's been a little overlap on that. Um, the first error was in April of 2008 when he was in federal custody on a writ. I think we all agree that 3585 applies. He shouldn't get credit, um, for that time in federal custody. The second error, there are four errors total. Second error was in August of 2009 when the state said, okay, he's finished his time. Take him on this federal detainer. There's less detail about when he was waiting to be transferred and transported and all of that. That would fall under 3585A. Um, for the August one, basically what happened is they notified them, uh, the state notified the marshals on, uh, August 7th, 2009, he was returned to state custody on November 3rd, 2009. Okay. Oh, counsel, can I interrupt you? Yes. Uh, just, just so we're clear, a detainer is different from a writ of habeas corpus ad prosequendum, correct? Yes. It's actually a notice that the marshal issues to a facility that otherwise has custody of an individual saying, would you please put a hold on this individual and not release him or her, uh, at the conclusion of their sentence with you because we need them. Right. Whereas the writ, the case law characterizes it as being on loan. Yeah. So it's, it's temporary by its definition. Okay. How many of these are issued by clerical or administrative people within the marshal service? I don't know that, that level of detail, to be honest. Um, and then the third error, December of 2009, there's a little bit more detail in the record that the state had informed the marshals that he, again, this was just, uh, four months later, informed the marshals that service, uh, he'd served a sentence and to come get him. There was even an email, um, saying that, uh, they would release him to the street if he wasn't picked up. So then here we've got on the record, December 9th, 2009 is that second time, error number three in 2009, when, um, the state asked the federal government to get him on detainer. Um, he was actually transferred and taken custody by the marshals on December 14th, 2009. So there's that five days where he was waiting, awaiting transportation under subdivision A. Do we have a declaration from Henry Davis saying he was not actually designated at that time? Um, I have in the record that the marshals requested designation and that, let's see, um, designated him to FCI Beaumont in Texas, um, but he wasn't actually transferred. I, I'm assuming, Henry, see Henry Davis management says he's the management analyst designation and sentence computation. And it says, let's see, he was not actually designated or transferred to Beaumont at this time. It's talking about the December 14th, 2009 instead records indicate he remained in marshal service custody until February 12th, at which time he was again, returned to, I guess, the Dallas, uh, corrections facility. And this is again, part of the problem with this case is I did comb through those records that Mr. Davis relied on and they're not quite as clear as the declaration would suggest. And so there was a request for designation. It says somewhere in those records, I've got the citation in my brief. It's, um, in my excerpts of record, it's on page 46, um, and in the initial excerpts of record from the initial briefing, it's on page 64, um, that it does say he was designated to FCI Beaumont. Um, it's not an entire more than once, did it not? Yes. He was designated more than once to Beaumont. Right, exactly. He was. And then he spent, he, and he wasn't just in, um, a detention center either. He was in actual, uh, FCI facilities. Um, where's the, um, so when was he designated to, um, to Beaumont? To Beaumont. Because I didn't see that in the August 7th, I didn't see a record saying he was designated. Yeah, that's just it. I don't see it for August, but I do for December. I have. And so for December, it seemed to be a conflict in the record. There was an email saying he was designated, but the declaration says he was not. So what I saw was a conflict for, for December. Right. And he was, and he was housed in more than just a detention facility, which would be like, you know, the equivalent of county jail or something. He was actually in correctional institution. He was at, uh, Segoville. Segoville. Yeah. But then he. And Beaumont. It says he was housed at Segoville, and then he was transported to Oklahoma City Federal Holdover, which I'm not sure what that is. I think that's some kind of a detention center, but I don't, I don't know. I think it's like, it's like a prison at the airport. Yeah. And then he was transported. It's sort of a hub for the Marshalls Transportation Center. Back to Segoville and never to Beaumont. So this is the August incident. So it's like they didn't know what to do with him, is what I was inferring from that. And then December, he was transported to Segoville again, and either was or was not designated to Beaumont, but never went. So that's my understanding. Right. And that's exactly my point. The government didn't even know what to do with him. And that's why he should get the credit, because he was subjected to all those transfers. But he did get credit. The problem I'm having with the equities of the case, I think you'd have a much stronger case if he'd been denied credit. But he, he got credit for all the days, either in the state, against his state sentences, or against his federal sentence. But isn't the question whether he should get them toward his federal sentence? I mean, if he is serving federal custody, shouldn't he get credit for federal time? That's the issue separate and apart from whether the state gave him credit. But wasn't the federal sentence ordered to run consecutive to the state? It was. Yes. So, so, I mean, so he was, if his, his sentence, his federal sentence started in August or December, then he would be getting credit both for his state sentence and his federal sentence. And that would not be unprecedented. There are other cases. There's nothing to prohibit that. Right. Exactly. And because it's, it's not one of those things, like with the writ, where it clearly falls within the, the BOP guideline, it falls within 3585. This just isn't that situation. It doesn't fit anywhere and there's no case law on it. And again, we have this situation over and over, it all applies to the writs, but not when there's a detainer. And that's the difference in this case. Two differences. One, there's a detainer. And twice, Texas was very insistent. That goes back to Judge Okuda's early question about should the sovereign speak through a clerical error. Because it must happen all the time. I mean, you've got tens of thousands of people and there's going to be mistakes all the time. I mean, there's no doubt about that. And the cases show there are mistakes all the time, but again, this is different. It's more egregious because back and forth, as you said yourself, the, the federal government didn't know what to do with him. They were transferring him all over the place. The state was insistent twice within four months that, take him, we're going to put him on the streets. And I'm sorry, just to clarify, Judge Tolman, you had mentioned when he actually was put on streets. These two incidents, errors two and three, happened in August and December 2009. When he was actually released to the street was in February of 2011, when the state sentence was truly complete. And he did get federal credit for that. Okay. I just wanted to make sure that was. Thank you very much. Both counsel. The case just argued is submitted. Thank you. We'll take it under advisement and try and puzzle our way through it and give you an answer as soon as we can. We are adjourned for the day.
judges: Tallman, Ikuta, Oliver